CROOK, Appellant, vs. BROCHE, Respondent.

*January 11—February 6, 1934.*

For the appellant there was a brief by *Barber, Keefe, Patri & Horwitz,* attorneys, and *W. Mead Stillman* of counsel, all of Oshkosh, and oral argument by *Mr. Frank B. Keefe* and *Mr. Stillman.*

For the respondent there was a brief by *Lamfrom, Tighe, Engelhard & Peck* of Milwaukee, and *David Krueger* of Oshkosh, and oral argument by *A. J. Engelhard.*

WICKHEM, J.   The sole question in this case is whether there was an issue of fact concerning defendant's negligence, and its causal relation to plaintiff's injury.   The

principal controversy relates to whether there is evidence sufficient to enable a jury to determine, otherwise than by conjecture and guess, that defendant's automobile struck plaintiff. This requires a consideration of the facts.

Plaintiff was standing in the center of Jackson Drive in the city of Oshkosh, where that street intersects the railway right of way. He was facing north, and had been engaged in swinging a red lantern to warn traffic approaching the railroad on Jackson Drive of certain switching operations then being conducted on the tracks of the railroad. Plaintiff held the lantern in his right hand. This lantern was equipped so as to show a red light both to the north and to the south, but had shields which prevented the light from being seen from the east or west. As the railroad tracks cleared, several cars proceeded to cross the railroad tracks from the south. One of these was a large truck. Two cars proceeded across the railroad tracks from the north. The leading car was that of the defendant. The accident happened about five o'clock in the evening. It was dark, misty, and foggy, and there was a slight drizzle. There was a lighted street lamp almost directly above the point where plaintiff stood on the highway. Plaintiff testified that the cars moving north passed quite close to him, causing him some apprehension, and that he saw a car from the north approaching him and heard the noise of traffic approaching from the south; that he glanced to the south and saw the truck, then looked to the north again and saw the car still bearing down upon him. He put out his left hand to ward off the car, but was struck down by it. He testified that this car was driven by a woman.

There is testimony to the effect that the large truck and the automobile passed the plaintiff almost simultaneously. One Reimer testified that he was driving his car in a southerly direction, and that there was but one car ahead of his

on the west side of Jackson Drive, proceeding in the same way that he was going; that he was about one hundred feet behind it, and that each car was being driven about three feet to the west of the center line of the highway. As he approached the railroad crossing he noticed the flasher lights in operation but did not see the flagman's lantern at first, the automobile ahead of him obscuring his view; that he first noticed the red lantern falling, and saw the body of a man falling at the same time, away from the automobile which was proceeding ahead of him in the same direction. He testified positively that the plaintiff was not struck by and did not come in contact with the truck approaching from the south.

The defendant testified that she was driving the automobile south on Jackson Drive, noticed the flasher lights, and slowed down so that she might not have to stop at the railroad if the track was clear by the time she reached it. She claims to have been driving her car at from five to eight miles an hour, and that by the time she reached the tracks the crossing was clear and she proceeded onto the railroad right of way. The windshield wiper was in operation and she had a clear vision of the roadway ahead. There were no automobiles proceeding ahead of her in the same direction. She claims to have been driving within three feet of the right-hand curb on Jackson Drive. She did not see the lantern nor the plaintiff while crossing the right of way. When the front wheels of her automobile had crossed the most southerly rails she heard a loud crash, brought her car to a stop immediately, and went back to see what was the matter. She interviewed an employee of the railroad, who advised her to report the matter to the police, whether she hit the plaintiff or not. There is some evidence that defendant made statements before the trial that as she went over the most southerly track she felt an unusual bump, but

this statement both the defendant and one of the persons to whom she is alleged to have made the statement denied upon the trial.

Upon this evidence there was clearly a jury issue as to whether defendant's car struck plaintiff. Plaintiff was struck either by the north-bound truck or by defendant's car. A jury could conclude from Reimer's testimony that it was defendant's car and not the truck that struck plaintiff. While Reimer did not know that the car concerning which he testified was that of defendant, the evidence is clear that only two cars were proceeding south. One was Reimer's, and the one proceeding in front of him was defendant's. The conclusion that there was a jury issue would follow even if plaintiff's testimony were to be disregarded. While plaintiff's testimony was confusing and contradictory, he definitely testified to the fact that he was struck by a south-bound car driven by a woman, and we cannot say as a matter of law that a jury would not be entitled to believe at least this much of his testimony, especially in view of the fact that it was substantially corroborated by Reimer. There being a jury question as to whether defendant's car struck plaintiff, there is certainly a jury question as to negligence with respect to lookout, since defendant testified that she did not see plaintiff at any time prior to the accident.

*By the Court.*—Judgment reversed, and cause remanded with directions to grant a new trial.